ORIGINAL

Approved: _____
KIERSTEN A. FLETCHER/EMILY A. JOHNSON
Assistant United States Attorneys

Before:  THE HONORABLE KATHARINE H. PARKER
         United States Magistrate Judge
         Southern District of New York

19MAG 5610

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :   **SEALED COMPLAINT**
                                    :
        - v. -                      :   Violation of
                                    :   18 U.S.C. § 1956(h)
LAZARO FELIX ROSABAL FLEITAS,       :
JOSE ANTONIO VITON,                 :   COUNTY OF OFFENSE:
                                    :   NEW YORK
                Defendants.         :

- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

CHRISTOPHER BASTOS, being duly sworn, deposes and says that he is a Task Force Officer with Department of Homeland Security - Homeland Security Investigations ("HSI"), and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Money Laundering)

1. From at least in or about September 2018 through at least in or about January 2019, in the Southern District of New York and elsewhere, LAZARO FELIX ROSABAL FLEITAS and JOSE ANTONIO VITON, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate the money laundering laws of the United States.

2. It was a part and an object of the conspiracy that LAZARO FELIX ROSABAL FLEITAS and JOSE ANTONIO VITON, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity as defined in Title 18, United States Code, Sections 1956(c)(7)(A) & (B), to wit, the proceeds of wire fraud, in

violation of Title 18, United States Code, Section 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

3. The bases for my knowledge and the foregoing charge are, in part, as follows: I have been a Task Force Officer with HSI since 2015 and a Detective with the New York City Police Department ("NYPD") since 2006. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Since in or about December 2018, I have been investigating a scheme to defraud elderly victims in the New York area. Specifically, on or about December 14, 2018, I met with an individual ("Individual-1") and Individidual-1's spouse ("Individual-2") at their home in the Bronx, New York. During the interview, Individual-1 and Individual-2 told me, in sum and substance, the following:

a. On or about December 12, 2018, Individual-1 received a phone call from an individual who identified himself as "Walter Elliott" and called from a particular cellphone ("Elliott Cellphone-1"). During the call, Elliott told Individual-1 that Individual-1's grandson had been involved in a motor vehicle accident and had been arrested by local authorities. Elliott further stated that Individual-1's grandson needed money to be sent to him in the form of Target gift cards in order for Individual-1's grandson to be bailed from law enforcement custody. Individual-1 reported the call to the New York City Police Department.

b. Individiual-1 and Individual-2 have a grandson, but he was not arrested and did not need bail money.

2

c. On or about December 14, 2018, after Individual-2 received an additional call from Elliott, I assisted Individual-2 in placing several consensually recorded calls to Elliott Cellphone-1, during which calls Individual-2 told the Elliott, in sum and substance, that Individual-2 did not know how to purchase gift cards. Individual-2 instead suggested that Individual-2 could send cash, and the Elliott provided Individual-2 an address in Miami, Florida ("Miami Address-1") to which Individual-2 could send $5,000 in U.S. Currency. Elliott also instructed Indivdiual-1 and Individual-2 not to call their grandson and not to tell their grandson about the calls in the event their grandson returned home.

5. On or about December 17, 2018, HSI conducted a controlled delivery of an empty box ("Package-1") from Individual-1 and Individual-2 to Miami Address-1. When I arrived at Miami Address-1 on that date, Miami Address-1 appeared to be a residence that was in the process of being renovated and Package-1 had already been delivered.

6. On several occasions between in or about December 2018 and May 2019, HSI agents interviewed a cooperating witness ("CS-1"), who has agreed to cooperate with law enforcement in hopes of receiving leniency in connection with CS-1's criminal conduct. Based upon my conversations with CS-1, I have learned, among other things, the following:

a. CS-1 was paid by LAZARO FELIX ROSABAL FLEITAS,[1] the defendant, to provide ROSABAL with addresses to which packages of cash could be shipped.

b. CS-1 provided ROSABAL with two addresses, including Miami Address-1. CS-1 previously received a package at another address in Miami, Florida, and provided the package to ROSABAL. CS-1 observed ROSABAL open that package, remove $400 cash from it, and provide the $400 cash to CS-1.

---

[1] CS-1 did not know ROSABAL by name, but identified a photograph of ROSABAL as the individual who recruited him and paid him for providing addresses. CS-1 further described ROSABAL as dressing in all white on at least one occasion. Based upon my participation in this investigation and my conversations with other HSI agents, I have learned that ROSABAL represents himself to be a member of a religious organization and that ROSABAL frequently dresses in all white religious clothing.

c.  On or about December 17, 2018, ROSABAL met CS-1 in the vicinity of Miami Address-1 and informed CS-1, in sum and substance, that law enforcement had intercepted Package-1.

7.  Based upon my communications with other members of the NYPD and my review of reports generated by them, I learned that on or about January 28, 2019, the NYPD interviewed an individual ("Individual-3") who resides in New York, New York. During the interview, Individual-3 told the NYPD, in sum and substance, the following:

a.  Individual-3 received several phone calls from an individual who identified himself as "Walter Elliott" and called from a particular cellphone ("Elliott Cellphone-2"). During the calls, Elliott told Individual-3 that Individual-3's grandson had been involved in a motor vehicle accident and had been arrested. Elliott further stated that Individual-3's grandson needed money to be bailed from law enforcement custody.

b.  Indivdiual-3 agreed, and sent approximately $20,000 in U.S. Currency to addresses in the Miami, Florida area in an effort to bail Individual-3's grandson out of jail. Individual-3 further agreed to send $5,000 in U.S. Currency to another address in Miami, Florida ("Miami Address-2") but had not yet sent the $5,000 when Individual-3 contacted the NYPD.

8.  On or about January 30, 2019, HSI conducted a controlled delivery of an empty box ("Package-2") purporting to contain the additional $5,000 from Individual-3 to Miami Address-2. Based on my participation in this investigation, and my conversations with other HSI agents, I have learned, among other things, the following:

a.  On or about January 30, 2019, agents from HSI went to Miami Address-2, where they observed a black Honda parked nearby (the "Black Honda") and observed an individual ("CS-2")[2] approach the delivery truck to sign for Package-2.

b.  When CS-2 was asked for the addressee on Package-2, CS-2 pulled up a communication on CS-2's phone and HSI was able to observe the name "Viton" at the top of the communication in CS-2's phone. Based upon my participation in

---

[2]  CS-2 has since agreed to cooperate with law enforcement in hopes of receiving leniency in connection with CS-2's criminal conduct.

4

this investigation and my later communications with CS-2, I believe CS-2 was looking at a communication with JOSE ANTONIO VITON, the defendant, to determine which name CS-2 should provide as the name on Package-2.

9. On several occasions between in or about January and June 2019, HSI agents interviewed CS-2. Based upon my conversations with CS-2, as well as my conversations with other agents with HSI regarding their conversations with CS-2, I have learned, among other things, the following:

a. CS-2 was recruited by JOSE ANTONIO VITON, the defendant, who paid CS-2 to provide VITON with addresses to which packages could be shipped and to pick up packages for VITON.

b. CS-2 knew that the packages were connected to something illegal, because CS-2 would not otherwise have been paid to pick them up.

c. CS-2 picked up approximately two packages for VITON in January 2019.

d. On or about January 19, 2019, VITON picked up CS-2 and they both went to pick up a package ("Package-3") in the vicinity of Homestead, Florida. While there, CS-2 observed VITON hand Package-3, unopened, to an individual driving a black Chevrolet Camaro (the "Camaro"). CS-2 then showed HSI the Instagram page for the person driving the Camaro, which contained several photographs of the Camaro, and listed the user as "Lazaro Rosabal Fleitas," whom I recognized to be LOZARO FELIX ROSABAL FLEITAS, the defendant, based on my review of photographs of ROSABAL contained in law enforcement databases. VITON paid CS-2 $100 for picking up Package-3.

e. VITON was present when Package-2 arrived on January 30, 2019, and the Black Honda belongs to VITON.

f. On or about January 30, 2019, CS-2 picked up a package, which I know to be Package-2, and provided it to VITON in the parking lot of a retail bank (the "Bank") after both VITON and CS-2 left the location at which CS-2 signed for Package-2.[3]

---

[3] Based upon my review of surveillance footage obtained from the Bank, VITON's Black Honda parked in front of the Bank next to CS-2's vehicle on that date, VITON exited the Black Honda, got into CS-2's vehicle for a moment, and then returned to the Black Honda.

5

10. On several occasions between in or about January and June 2019, HSI agents interviewed JOSE ANTONIO VITON, the defendant. Based upon my conversations with VITON, as well as my conversations with other agents with HSI regarding their conversations with VITON, I have learned, among other things, the following:

    a. VITON was recruited by LAZARO FELIX ROSABAL FLEITAS, the defendant, in approximately September 2018 to provide ROSABAL with addresses at which packages could be shipped.

    b. ROSABAL paid VITON approximately $400 per package and VITON picked up approximately six to eight packages.

    c. VITON was instructed by ROSABAL to never open the packages, was initially worried about what was inside the packages and continued to ask ROSABAL about the contents. After VITON picked up the third package, ROSABAL told VITON that the packages contained cash and ROSABAL began opening the packages in VITON's presence.

    d. VITON believed the cash in the packages he delivered to ROSABAL represented the proceeds of narcotics sales.

WHEREFORE, deponent requests that a warrant be issued for the arrest of LAZARO FELIX ROSABAL FLEITAS and JOSE ANTONIO VITON, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

TFO
CHRISTOPHER BASTOS
Task Force Officer, Homeland Security Investigations

Sworn to before me this
13th day of June, 2019

HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York